**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RUSTY W. MCMURRAY, | § | Bankruptcy Case No. 24-10777 |
| | § | |
| SSN: XXX-XX-8713 | § | (Chapter 13) |
| | § | |
| Debtor. | § | |
| KAPITUS SERVICING, INC., AS SERVICING AGENT FOR KAPITUS, LLC | § | |
| | § | Adversary Proceeding No. 24-01023 |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | |
| RUSTY W. MCMURRAY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**I. Summary of the Argument** ....... 1

**II. Statement Of Undisputed Material Facts** ....... 1

A. Procedural History ....... 1

B. Sunshine Care Partners Inc., d/b/a Sunshine Care Partners, Defendant, Rusty W. McMurray and Plaintiff Kapitus Enter into an Agreement ....... 2

C. Defendant Stops Merchant / SCP's Payments to Kapitus, Opens Sunshine Care Partners of Florida, Inc., Diverts Kapitus's Collateral to a New Entity. ....... 5

D. Kapitus's Claim ....... 11

**III. Standard for Summary Judgment** ....... 12

**IV. Argument and Authority** ....... 13

A. The Elements of Embezzlement Under 11 U.S.C. § 523(a)(4**)** ....... 13

1. Kapitus entrusted its property into Defendant's hands and Defendant misappropriated Kapitus's property that was entrusted to him ....... 14

2. Defendant acted with fraudulent intent, inferable from the timeline, admitted knowledge, and pattern of transfers after default ....... 17

B. Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) –Actual Fraud ....... 18

C. Attorney's Fees and Expenses, and Interest ....... 20

**V. Conclusion** ....... 20

**Appendix A. Exhibit List** ....... 22

## I. SUMMARY OF THE ARGUMENT

The issue here is straightforward: should Debtor/Defendant Rusty W. McMurray's ("Defendant") debt to Plaintiff Kapitus Servicing, Inc., as Servicing Agent for Kapitus LLC ("Plaintiff" or "Kapitus") be discharged when Defendant intentionally created a new company, and, with express and knowing intent, cut Kapitus off from the payments Kapitus was entitled to under the Agreement and diverted Kapitus's Collateral to his new company? The undisputed facts show Defendant: (1) embezzled Kapitus' property (i.e., its Collateral); and (2) committed actual fraud. Kapitus is entitled to summary judgment finding the debt owed to it by Defendant is non-dischargeable under 11 U.S.C. § 523(a)(4) and 523(a)(2)(A).[1]

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Procedural History.

1. On June 20, 2024, Defendant filed a Voluntary Petition under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code").[2]

2. September 16, 2024, was the deadline for the filing of complaints objecting to discharge and for determination of dischargeability of debts.[3]

3. Plaintiff timely filed its Complaint asserting nondischargeability of debt under Section 523 of the Bankruptcy Code.[4]

4. Via Count I of the Complaint, Plaintiff seeks the determination of nondischargeability of debt under Section 523(a)(2)(A) of the Bankruptcy Code.[5]

---

[1] Although this motion seeks partial summary judgment, a ruling in Kapitus's favor that Debtor's debt is non-dischargeable would be dispositive of the entire case.

[2] *See* Complaint, ¶ 9 (Ex. 1); Answer, ¶ 1 (Ex. 2) (Defendant admits). *See also*, In Re Rusty W. McMurray, Petition, Bankr. Case No. 24-10777, (Dkt. 1).

[3] *See* Notice of Bankruptcy, Bankr. Case No. 24-10777, (Dkt. 7) (Ex. 16).

[4] *See* Complaint, ¶ 20 (Ex. 1); Answer, ¶ 1 (Ex. 2) (Defendant admits).

[5] *See* Complaint, ¶¶ 109-24 (Ex. 1).

5. Via Count III of the Complaint, Plaintiff seeks the determination of nondischargeability of debt under Section 523(a)(4) of the Bankruptcy Code.[6]

6. On October 30, 2024, Defendant filed his Answer admitting various allegations of the Complaint.[7]

7. On November 20, 2025, Kapitus, via counsel, deposed Defendant. *See* McMurray Depo. Tr. (Ex. 18).

**B. Sunshine Care Partners Inc., d/b/a Sunshine Care Partners, Defendant Rusty W. McMurray, and Plaintiff Kapitus Enter into an Agreement.**

8. Sunshine Care Partners Inc., d/b/a Sunshine Care Partners ("SCP" or "Merchant") was a company duly organized in the State of Oklahoma.[8]

9. On October 20, 2015, Merchant was officially formed.[9]

10. Effective October 20, 2015, Defendant was the registered agent of Merchant.[10]

11. As of June 21, 2023, Defendant was a 74% owner of Merchant.[11]

12. As of June 21, 2023, Defendant was the chief executive officer of Merchant.[12]

13. On June 21, 2023, Defendant submitted an application for funding for Merchant (the "Application").[13]

14. On June 23, 2023, Kapitus and Defendant on behalf of Merchant / SCP entered into a: (a) Loan Summary; (b) Authorized Sub-Servicing Agreement; (c) Loan Agreement; (d) Security Agreement; (e) Personal Guaranty; and (f) Voluntary Agreement to Arbitrate (collectively, the

---

[6] *See* Complaint, ¶¶ 139-66 (Ex. 1).
[7] *See* Answer, ¶ 1 (Ex. 2).
[8] *See* Complaint, ¶ 10 (Ex. 1); Answer, ¶ 1 (Ex. 2); Transcript of November 20, 2025 Deposition of Rusty W. McMurray ("McMurray Depo. Tr.") at 14:4 (Ex. 18).
[9] *See* Secretary of State Summary (Ex. 3); McMurray Depo. Tr., at 11:12- 13 (Ex. 18).
[10] *See* Complaint, ¶ 13 (Ex. 1); Answer, ¶ 1 (Ex. 2) (Defendant admits); SOS Summary (Ex. 3).
[11] *See* June 2023 Application (Ex. 4); McMurray Depo. Tr., at 10:13 (Ex. 18).
[12] *See* McMurray Depo. Tr., at 10:21 (Ex. 18).
[13] *See* June 2023 Application (Ex. 4); McMurray Depo. Tr., at 12:2 (Ex. 18).

"Agreement").[14]

15. On June 23, 2023, Defendant also entered into the Agreement personally as a co-guarantor.[15]

16. Defendant signed the Agreement both on behalf of Merchant and as Guarantor.[16]

17. In connection with the underlying loan, Defendant also signed Representations and Acknowledgements ("R&As") in his personal capacity.[17]

18. Defendant initialed specific R&As in his personal capacity.[18]

19. Among the R&As Defendant initialed in his personal capacity was: "I understand that a blanket UCC-1 financing statement will be filed to secure my repayment obligation and that the UCC-1 may be filed by an agent or under an alias."[19]

20. Defendant admits the Security Agreement granted Plaintiff liens upon certain assets of SCP.[20]

21. Defendant reviewed the Agreement before he signed it on behalf of SCP.[21]

22. Defendant reviewed the Agreement before he signed it as a guarantor.[22]

23. Prior to entering into the Agreement, Defendant provided Kapitus with a voided

---

[14] *See* Complaint, ¶ 21 (Ex. 1); Answer, ¶ 1 (Ex. 2) (Defendant admits); Combined Loan Agreement, pp. 2, 7, 13, 15, 19 of 19 (Ex. 5); Wolfson Decl., ¶ 9 (Ex. 17).

[15] *See* Complaint, ¶ 23 (Ex. 1); Answer, ¶ 1 (Ex. 2) (Defendant admits the signatures of McMurray on the referenced documents are the Defendant's signatures in the capacity stated in the documents); Agreement, pp. 2, 7, 13, 15, 19 of 19 (Ex. 5); Wolfson Decl., ¶ 10 (Ex. 17).

[16] *See* Complaint, ¶ 23 (Ex. 1); Answer, ¶ 1 (Ex. 2) (Defendant admits the signatures of McMurray on the referenced documents are the Defendant's signatures in the capacity stated in the documents); Agreement, pp. 2, 7, 13, 15, 19 of 19 (Ex. 5).

[17] *See* Complaint, ¶ 24 (Ex. 1); Answer, ¶ 1 (Ex. 2) (Defendant admits the signatures of McMurray on the referenced documents are the Defendant's signatures in the capacity stated in the documents); R&As (Ex. 6); McMurray Depo. Tr., at 20:7-16 (Ex. 18).

[18] *See* R&As (Ex. 6); Wolfson Decl., ¶ 11 (Ex. 17); McMurray Depo. Tr., at 20:17-21:10 (Ex. 18).

[19] *See* R&As ¶ 3 (Ex. 6); Wolfson Decl., ¶ 12 (Ex. 17); McMurray Depo. Tr., at 20:17-20 (Ex. 18).

[20] Answer, ¶ 4 (Ex. 2).

[21] McMurray Depo. Tr., at 18:11-14; 28:9-11 (Ex. 18).

[22] McMurray Depo. Tr., at 18:15-18 (Ex. 18).

check from Merchant's corporate bank account to withdraw Merchant's ACH payments from.[23]

24. The Agreement required SCP to use only one account (the "Account") to remit payment to Plaintiff, which was designated by the parties in the Loan Agreement and which Account Plaintiff was to have irrevocable access to collect the required Automated Clearing House ("ACH") debits the Account.[24]

25. The designated Account from which Plaintiff collected Merchant's Payment from was SCP's Arvest account ending # 9327.[25]

26. The Agreement entitled Plaintiff to collect a bi-weekly amount of $4,861.00 (the "Payment") from the Account until such time as Plaintiff received payment in full.[26]

27. The Agreement prohibited Merchant and Defendant from blocking or stopping payment on Plaintiff's ACH debits or permitting any event to occur that could cause diversion of any of Merchant's receivables to another Account.[27]

28. Defendant represented to Plaintiff his personal guaranty of performance of the written representations, warranties, and covenants made in the Loan Agreement.[28]

29. Pursuant to the terms of the Agreement, Kapitus lent Merchant the principal amount of $171,800.00 with specified and defined interest totaling $80,746.00 for a total repayment

---

[23] McMurray Depo. Tr., at 27:20-25; 29:1-8 (Ex. 18).

[24] *See* Complaint, ¶ 49 (Ex. 1); Answer, ¶ 6 (Ex. 2) (admitting "documents will speak for themselves"); Agreement, "Loan Agreement," General ¶ 3, General Terms, ¶¶ 1.1, 2.6, pp. 4, 6 of 19 (Ex. 5); Wolfson Decl., ¶ 14 (Ex. 17).

[25] *See generally* SCP-Arvest Account # 9327, Combined Statements (Ex. 9); Wolfson Decl., ¶ 15 (Ex. 17).

[26] *See* Complaint, ¶ 50 (Ex. 1); Answer, ¶ 6 (Ex. 2) (admitting "documents will speak for themselves"); Agreement, "Loan Agreement," General ¶ 3, p. 4 of 19 (Ex. 5); Wolfson Decl., ¶ 16 (Ex. 17).

[27] *See* Complaint, ¶ 51 (Ex. 1); Answer, ¶ 6 (Ex. 2) (Defendant states that the documents speak for themselves); Agreement, "Loan Agreement," General Terms, ¶ 2.6, p. 6 of 19 (Ex. 5); Wolfson Decl., ¶ 17 (Ex. 17).

[28] *See* Complaint, ¶ 57 (Ex. 1); Answer, ¶ 6 (Ex. 2) (admitting "documents will speak for themselves"); Agreement, "Guaranty," ¶ 1, p. 14 of 19 (Ex. 5); Wolfson Decl., ¶ 18 (Ex. 17).

amount of $252,546.00.[29]

30. The Agreement provided for a repayment period of twenty-four (24) months in installments totaling fifty-two (52) payments of $4,861.00 each. [30]

31. The Agreement called for Plaintiff to disperse $167,505.00 (the principal amount less any fees or third-party amounts) (the "Disbursement Amount") to Merchant.

32. Kapitus fulfilled its obligations under the Agreement by advancing the Disbursement Amount to Merchant.[31]

33. On June 27, 2023, Merchant received the Disbursement Amount from Kapitus.[32]

34. The Disbursement Amount was deposited into Merchant's account ending #9327.[33]

**C. Defendant Stops Merchant / SCP's Payments to Kapitus, Opens Sunshine Care Partners of Florida, Inc., Diverts Kapitus's Collateral to a New Entity.**

35. Merchant was operating from at least August 31, 2023, until January 2, 2024.[34]

36. Merchant and Defendant made payments totaling $26,185.50 toward the Loan Agreement.[35]

37. Merchant's September 8, 2023, payment to Plaintiff was stopped on or around September 13, 2023.[36]

38. Defendant stopped the September 8, 2023, payment to Plaintiff on or around

---

[29] *See* Complaint, ¶ 28 (Ex. 1); Answer, ¶ 5 (Ex. 2) (admitting "documents will speak for themselves"); Agreement, "Loan Summary," p. 1 of 19 (Ex. 5); Wolfson Decl., ¶ 19 (Ex. 17).

[30] *See* Agreement, "Loan Summary," p. 1 of 19 (Ex. 5); Wolfson Decl., ¶ 20 (Ex. 17).

[31] *See* Complaint, ¶ 29 (Ex. 1); Merchant Statement of Activity (Ex. 8); McMurray Depo. Tr., at 22:1-11 (Ex. 18); Wolfson Decl., ¶ 21 (Ex. 17).

[32] *See* SCP-Arvest Account # 9327, Combined Statements, p. 112 of 165 (Ex. 9); Wolfson Decl., ¶ 22 (Ex. 17); McMurray Depo. Tr., at 71:25-25; 72:1-11 (Ex. 18).

[33] . *See* SCP-Arvest Account # 9327, Combined Statements from 2023-04-20 to 2024-01-02 (Redacted), p. 112 of 165 (Ex. 9); McMurray Depo. Tr. 71:25-25; 72:1-11 (Ex. 18).

[34] McMurray Depo. Tr., at 73:13-15 (Ex. 18).

[35] *See* Merchant Statement of Activity (Ex. 8); Wolfson Decl., ¶ 24 (Ex. 17).

[36] *See* Merchant Statement of Activity (Ex. 8); McMurray Depo. Tr., at 23:24-25; 25:1-4; 27:8-9 (Ex. 18); Wolfson Decl., ¶ 25 (Ex. 17).

September 13, 2023.[37]

39. Merchant's September 13, 2023, payment to Plaintiff was stopped on September 18, 2023.[38]

40. Defendant stopped the September 13, 2023, payment to Plaintiff on September 18, 2023.[39]

41. Defendant understands the Agreement prohibited him from stopping lender [Kapitus's] initiated debits under the Loan Agreement.[40]

42. On September 11, 2023, an entity named Sunshine Care Partners of Florida, Inc., (SCP of Florida) was formed.[41]

43. Defendant was the incorporator of SCP of Florida.[42]

44. SCP of Florida's entity summary with the State of Florida Division of Corporations lists a corporate mailing address of 1903 S. Fir Plaza, Broken Arrow, OK, 74012, Defendant's home address.[43]

45. SCP of Florida's entity summary with the State of Florida Division of Corporations lists a Defendant as the Vice President of SCP of Florida.[44]

46. The Electronic Articles of Incorporation for SCP of Florida list a corporate mailing address of 1903 S. Fir Plaza, Broken Arrow, OK, Defendant's home address. [45]

---

[37] McMurray Depo. Tr., at 23:24-25; 25:1-4; 27:8-9 (Ex. 17).
[38] *See* Merchant Statement of Activity (Ex. 8); Wolfson Decl., ¶ 26 (Ex. 17).
[39] McMurray Depo. Tr., at 75:18-23; 76:1-6 (Ex. 18).
[40] McMurray Depo. Tr. 7, 30:13-23 (Ex. 18).
[41] *See* SCP of Florida Entity Summary (Ex. 10); McMurray Depo. Tr., at 106:9-12 (Ex. 18).
[42] *See* Electronic Articles of Incorporation for SCP of Florida, p. 2 (Ex. 11); McMurray Depo. Tr., at 107:18-21. (Ex. 18).
[43] *See* SCP of Florida Entity Summary (Ex. 10); McMurray Depo. Tr., at 105:14-21 (Ex. 18).
[44] *See* SCP of Florida Entity Summary (Ex. 10); McMurray Depo. Tr., at 105:22-24 (Ex. 18).
[45] *See* Electronic Articles of Incorporation for SCP of Florida, p. 1 (Ex. 11); McMurray Depo. Tr., at 107:11-17. (Ex. 18).

47. Account ending #3240 was a bank account for SCP of Florida.[46]

48. On September 21, 2023, there was a priority check written from SCP account ending #9327 in the amount of $16,000.00.[47]

49. On September 21, 2023, there was a virtual deposit into SCP of Florida account ending #3240 in the amount of $16,000.00.[48]

50. Defendant effectuated the September 21, 2023, transfer of $16,000.00 from SCP to SCP of Florida.[49]

51. On October 18, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $7,500.00.[50]

52. On October 18, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $7,500.00.[51]

53. Defendant effectuated the October 18, 2023, transfer of $7,500.00 from SCP to SCP of Florida.[52]

54. On November 1, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $7,350.00.[53]

55. On November 1, 2023, there was a deposit into SCP of Florida account ending

---

[46] McMurray Depo. Tr., at 81:16-18; 110:4-6. (Ex. 18).

[47] *See* SCP-Arvest Account # 9327, Combined Statements, p. 46 of 165 (Ex. 9); McMurray Depo. Tr. 7, 99:4-6; 109:2-7 (Ex. 18).

[48] SCP-Arvest Account # #3240, Combined Statements, p. 17 of 17 (Ex. 12). McMurray Depo. Tr. 7, 115:23-25; 116:1-4 (Ex. 18). Erroneous references to account ending #2340 rather than #3240 were corrected on the record.

[49] McMurray Depo. Tr. 7, 109: 1-14 (Ex. 18).

[50] *See* SCP-Arvest Account # 9327, Combined Statements, p. 33 of 165 (Ex. 9); McMurray Depo. Tr. 7, 109:23-25; 110:1-3 (Ex. 18).

[51] *See* SCP-Arvest Account #3240, Combined Statements, p. 14 of 17 (Ex. 12); McMurray Depo. Tr. 7, 109:15-22 (Ex. 18).

[52] McMurray Depo. Tr. 7, 110:4-9 (Ex. 18).

[53] *See* SCP-Arvest Account # 9327, Combined Statements, p. 28 of 165 (Ex. 9); McMurray Depo. Tr. 7, 110:11-14 (Ex. 18).

#3240 in the amount of $7,350.00.[54]

56. Defendant effectuated the November 1, 2023, transfer of $7,350.00 from SCP to SCP of Florida.[55]

57. On November 2, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $2,000.00.[56]

58. On November 2, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $2,000.00.[57]

59. Defendant effectuated the November 2, 2023, transfer of $2,000.00 from SCP to SCP of Florida.[58]

60. On November 10, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $4,000.00.[59]

61. On November 10, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $4,000.00. [60]

62. Defendant effectuated the November 10, 2023, transfer of $4,000.00 from SCP to SCP of Florida.[61]

63. On November 16, 2023, there was a withdrawal from SCP account ending #9327

---

[54] *See* SCP-Arvest Account #3240, Combined Statements, p. 13 of 17 (Ex. 12); McMurray Depo. Tr. 7, 110:15-18 (Ex. 18).
[55] McMurray Depo. Tr. 7, 110:19-20 (Ex. 18.
[56] *See* SCP-Arvest Account # 9327, Combined Statements, p. 27 of 165 (Ex. 9); McMurray Depo. Tr. 7, 110:25; 111:1-3 (Ex. 18).
[57] *See* SCP-Arvest Account #3240, Combined Statements, p. 13 of 17 (Ex. 12); McMurray Depo. Tr. 7, 110:15-18 (Ex. 18).
[58] McMurray Depo. Tr. 7, 110:19-20 (Ex. 18).
[59] *See* SCP-Arvest Account # 9327, Combined Statements, p. 24 of 165 (Ex. 9); McMurray Depo. Tr. 7, 111:13-17 (Ex. 18).
[60] *See* SCP-Arvest Account #3240, Combined Statements, p. 12 of 17 (Ex. 12); McMurray Depo. Tr. 7, 111:18-22 (Ex. 18).
[61] *See* McMurray Depo. Tr. 7, 111:23-25 (Ex. 18).

in the amount of $4,000.00.[62]

64. On November 16, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $4,000.00.[63]

65. On November 27, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $3,000.00.[64]

66. On November 27, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $3,000.00.[65]

67. On November 28, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $3,000.00.[66]

68. On November 28, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $6,000.00. [67]

69. On December 1, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $3,000.00.[68]

70. On December 1, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $3,000.00.[69]

71. On December 4, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $3,000.00.[70]

72. On December 4, 2023, there was a deposit into SCP of Florida account ending

[62] *See* SCP-Arvest Account # 9327, Combined Statements, p. 20 of 165 (Ex. 9).
[63] *See* SCP-Arvest Account #3240, Combined Statements, p. 12 of 17 (Ex. 12).
[64] *See* SCP-Arvest Account # 9327, Combined Statements, p. 15 of 165 (Ex. 9).
[65] *See* SCP-Arvest Account #3240, Combined Statements, p. 11 of 17 (Ex. 12).
[66] *See* SCP-Arvest Account # 9327, Combined Statements, p. 14 of 165 (Ex. 9).
[67] *See* SCP-Arvest Account #3240, Combined Statements, p. 11 of 17 (Ex. 12).
[68] *See* SCP-Arvest Account # 9327, Combined Statements, p. 13 of 165 (Ex. 9).
[69] *See* SCP-Arvest Account #3240, Combined Statements, p. 11 of 17 (Ex. 12).
[70] *See* SCP-Arvest Account # 9327, Combined Statements, p. 12 of 165 (Ex. 9).

#3240 in the amount of $3,000.00.[71]

73. On December 12, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $2,000.00.[72]

74. On December 12, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $2,000.00.[73]

75. On December 20, 2023, there was a withdrawal from SCP account ending #9327 in the amount of $1,250.00.[74]

76. On December 20, 2023, there was a deposit into SCP of Florida account ending #3240 in the amount of $1,250.00.[75]

77. From September 21, 2023, through at least December 20, 2023, Defendant transferred $59,100.00 from SCP/Merchant to SCP of Florida.[76]

78. Defendant admits he effectuated all of the transfers from SCP account ending #9327 to SCP of Florida account ending #3240.[77]

79. Defendant understood the Agreement prohibited him from diverting SCP's receivables.[78]

80. Merchant's last payment to Kapitus in the total amount of $2,430.50 was initiated on September 18, 2023.[79]

81. Merchant's last payment to Kapitus cleared Merchant's designated Account on

[71] *See* SCP-Arvest Account #3240, Combined Statements, p. 10 of 17 (Ex. 12).
[72] *See* SCP-Arvest Account # 9327, Combined Statements, p. 9 of 165 (Ex. 9).
[73] *See* SCP-Arvest Account #3240, Combined Statements, p. 8 of 17 (Ex. 12).
[74] *See* SCP-Arvest Account # 9327, Combined Statements, p. 5 of 165 (Ex. 9).
[75] *See* SCP-Arvest Account #3240, Combined Statements, p. 6 of 17 (Ex. 12).
[76] *See* Summary of Transfers from SCP-Arvest Account # 9327 to SCP-Arvest Account #3240 from 2023-09-18 to 2024-08-27 (Ex. 13); McMurray Depo. Tr., at 112:5-9 (Ex. 18).
[77] *See* McMurray Depo. Tr. 7, 112:1-9 (Ex. 18).
[78] McMurray Depo. Tr. 7, 30:13-23 (Ex. 18).
[79] *See* Merchant Statement of Activity (Ex. 8); Wolfson Decl., ¶27 (Ex. 17).

September 20, 2023. [80]

**D. Kapitus's Claim.**

82. Merchant's last payment to Kapitus was initiated on September 18, 2023, and cleared Merchant's account on September 20, 2023; therefore, pursuant to paragraph 3.1 of the Loan Agreement, Merchant and Defendant, as Guarantor, were and are in default of the Loan Agreement.[81]

83. Section 3.1 of the Agreement also lists multiple Events of Default, including:

> (b) Borrower or Guarantor violate any term, covenant, or condition in the Transaction Documents;
>
> ****
>
> (j) Borrower or Guarantor, and/or all persons and entities claiming by, through or under Borrower or Guarantor, performs any act that encumbers the cash flow of the Borrower's business or reduces the value of the Collateral or the security interest granted in the Collateral under the Security Agreement;
>
> ****
>
> (n) Borrower fails to make any payment as agreed.[82]

84. Upon the occurrence of an Event of Default under Section 3 of the Loan Agreement, the entire Repayment Amount and any other amounts or fees due, less any amounts already paid, became immediately due and payable.[83]

85. Pursuant to paragraph 3.2 of the Loan Agreement, Kapitus exercised its remedies, including acceleration of all unpaid amounts and fees, against Merchant and Defendant.[84]

86. Under paragraph 3.5 of the Loan Agreement and the Authorized Sub-Servicing

---

[80] *See* SCP-Arvest Account # 9327, Combined Statements, p. 47 of 165 (Ex. 9).

[81] *See* Merchant Statement of Activity (Ex. 8); *see also* SCP-Arvest Account # 9327, Combined Statements, p. 47 of 165 (Ex. 9); Agreement, "Loan Agreement," p. 7 of 19 (Ex. 5); Wolfson Decl., ¶ 28 (Ex. 17).

[82] *See* Agreement, "Loan Agreement," ¶ 3.3, p. 7 of 19 (Ex. 5); Wolfson Decl., ¶ 29 (Ex. 17).

[83] *See* Agreement, "Loan Agreement," Intro. ¶ 3, p. 4 of 19; ¶ 3.4, p. 7 of 19 (Ex. 5); Wolfson Decl., ¶ 30 (Ex. 17).

[84] *See* Agreement, "Loan Agreement," ¶ 3.2, p. 7 of 19 (Ex. 5); Wolfson Decl., ¶ 31 (Ex. 17).

Agent Agreement, Defendants are liable to Kapitus for a "Default Fee" of $2,500.00 in the event of default.[85]

87. Under paragraph 3.3 of the Loan Agreement, Defendants are also liable to Kapitus for court costs and for attorney's fees equal to the greater of (i) twenty-five percent (25%) of the Total Balance due or (ii) the actual attorney's fees incurred by Kapitus in enforcing its rights under the Agreement.[86]

88. Paragraph 3.3 of the Agreement also calls for interest at the rate of ten percent (10%) per annum on the Principal Balance due to Kapitus under the agreement from the date of breach, September 26, 2023.[87]

89. As of the Petition Date, Debtor owed Kapitus at least $302,758.04, consisting of a $226,360.50 contractual balance, $16,682.42 in interest at 10% from September 26, 2023 (the date of default) to the Petition Date, $2,500.00 in contractual default fees, $57,215.12 in contractual attorney fees, plus post-petition attorney's fees, interest, and costs (the "Claim"). [88]

## III. Standard for Summary Judgment

A court should grant summary judgment where there is no genuine issue as to any material facts and the movant is entitled to judgment as a matter of law.[89] A fact is material if will affect the outcome of the suit under the governing law.[90] If the movant meets its initial burden of pointing to facts which show the movant is entitled to judgment, the non-moving party "must come forward

---

[85] *See* Agreement, "Sub-Servicing Agent Agreement," p. 3 of 19; "Loan Agreement," ¶ 3.5, pp. 7-8 of 19 (Ex. 5); Wolfson Decl. ¶ 32 (Ex. 17).
[86] *See* Agreement, "Loan Agreement," ¶ 3.3, p. 7 of 19 (Ex. 5); Wolfson Decl., ¶ 33 (Ex. 17).
[87] *See* Agreement, "Loan Agreement," ¶ 3.3, p. 7 of 19 (Ex. 5); Wolfson Decl., ¶ 34 (Ex. 17).
[88] *See* Wolfson Decl., ¶ 35 (Ex. 17); *see also* Kapitus's August 29, 2024, Proof of Claim #10-1, Part 2, p. 8 of 61 filed in *In Re Rusty W. McMurray*, Case No. 24-10777 (Ex. 15).
[89] *See* FED. R. CIV .P. 56; FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[90] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

with specific facts showing that there is a genuine issue for trial."[91] Not all fact disputes are genuine; for an issue to be genuine there must be more than 'some metaphysical doubt as to the material facts.'"[92]

## IV. Argument and Authority

The undisputed material facts entitle Kapitus to summary judgment on: (1) Count III (embezzlement) pursuant to Section 523(a)(4); and (2) Count I (actual fraud) under Section 523(a)(2)(A) of the Bankruptcy Code.

### A. The Elements of Embezzlement Under 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[93]

Federal common law controls the definitions of embezzlement for purposes of nondischargeability. "Embezzlement under federal law is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[94] Specifically, the elements to prove embezzlement under Section 523(a)(4) are: (1) entrustment (2) of property (3) of another (4) that is misappropriated.[95] A claim for embezzlement also "requires fraud in fact, involving moral turpitude or intentional wrong."[96] Accordingly, "embezzlement [also] requires a showing of 'fraudulent' intent…[b]ut this fraudulent intent is not identical to the type required for actual fraud or fraudulent misrepresentation under § 523(a)(2)."[97] Rather,

---

[91] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[92] *Anderson*, 477 U.S. at 260-61(quoting *Matsushita,* 475 U.S. at 586).
[93] *See* 11 U.S.C. 523(a)(4).
[94] *See Tulsa Spine Hospital, LLC, v. Paul N. Tucker and Sondra Tucker, Defendants (In re Tucker)*, 346 B.R. 844, 852 (Bankr. E.D. Okla., 2006) (quoting *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988) (citations omitted)).
[95] *See Tucker*, 346 B.R. at 852 (citing *In re Tilley*, 286 B.R. 782, 789 (Bankr. D. Colo. 2002)).
[96] *See Chenaille v. Joseph Palilla (In re Palilla)*, 493 B.R. 248, 252 (Bankr. D. Colo. May 28, 2013) (quoting *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986)).
[97] *See Chenaille*, 493 B.R. at 252.

embezzlement requires "*animus furandi*" or intention to steal or permanently to deprive.[98] Intent, under Section 523(a)(4), "can be inferred…from the surrounding circumstances" including a pattern of activity.[99]

**1. Kapitus entrusted its property into Defendant's hands and Defendant misappropriated Kapitus's property that was entrusted to him.**

The Agreement granted Kapitus a secured interest in Merchant / SCP's Collateral, including, but not limited to:

> (i) all accounts, accounts receivable, contracts… chattel paper, instruments, documents and other forms of obligations at any time owing to the Borrower arising out of …services rendered by Borrower, the proceeds…whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); all cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Borrower's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash") … (viii) all accessions to, substitutions for, and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments, Cash and UCC Article 9 Items (collectively referred to hereinafter as "Collateral").[100]

Kapitus's security interest in SCP's Collateral was properly perfected by filing of a UCC-1 Financing Statement in the State of Oklahoma on June 28, 2023.[101] The Loan Agreement provides for and allows Kapitus to file UCC financing statements and other notices or filings through Lender / Kapitus's UCC agent.[102] Kapitus's UCC-1 Financing Agreement was filed by CT Corporation as Representative.[103]

---

[98] *See id* (citing 3 Charles E. Torcia, *Wharton's Criminal Law* § 385 (15th ed. 1993) ("To constitute embezzlement, the property must generally be appropriated or converted with the intent permanently to deprive")). *See also Alternity Capital Offering 2, LLC, v. Saeid Ghaemi (In re Ghaemi)*, 492 B.R. 321, 327 (Bankr. D. Colo. 2013).

[99] *See Chenaille*, 493 B.R. at 252-53 (citing *Isaacs Cars, Inc. v. Woods* (*In re Woods*), 418 B.R. 226, 231 (Bankr. W.D. Ky. 2009) ("Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence")).

[100] *See* Agreement, "Security Agreement," p. 11 of 19 (Ex. 5); Wolfson Decl., ¶ 36 (Ex. 17).

[101] *See* Kapitus's UCC-1 Financing Statement (Ex. 7); Wolfson Decl., ¶ 35 (Ex. 17).

[102] *See* Agreement, "Loan Agreement," ¶ 1.12, p. 5 of 19 (Ex. 5); Wolfson Decl., ¶ 38(Ex. 17).

[103] *See* Kapitus's UCC-1 Financing Statement (Ex. 7); Wolfson Decl., ¶ 39 (Ex. 17).

Kapitus entrusted Defendant, as an officer of Merchant and guarantor, with Kapitus's property, i.e., the Collateral, specifically, Merchant's Cash and Receivables, were to be used, in part, to remit Payment to Kapitus every two weeks via ACH debit via the designated Account.[104] Kapitus entrusted Defendant with Kapitus's property, i.e., the Collateral, for use in Merchant / SCP's business:

> A Business Purpose as applied to use of proceeds obtained under this Loan Agreement, refers solely to the purchase and acquisition of specific products or services used for the following purposes only: (i) working capital, (ii) business insurance (but not self-insurance programs), (iii) franchise fees, (iv) employee training, (v) the purchase of equipment, (vi) inventory, (vii) business supplies and raw materials, and (viii) the construction, renovation or improvement of facilities (but not the purchase of real estate).[105]

Defendant, both on behalf of Merchant and as Guarantor, also made the following written representations, warranties, and covenants to Kapitus, among others:[106]

> 2.6. **BORROWER DEPOSITING ACCOUNT AGREEMENT AND ARRANGEMENTS. Without LENDER's prior written consent, Borrower will not** (i) change the Account through which Borrower's receivables are settled; (ii) **set up multiple bank accounts into which any of the Borrower's receivables are deposited or otherwise transferred**; (iii) **block or stop payment on LENDER debits initiated under this Agreemen**t; (iv) **permit any event to occur that could cause diversion of any of Borrower's receivables to another Account**; (v) **or take any other action that could have any adverse effect upon Borrower's obligations under the Transaction Documents**.

> 2.7. **CHANGE OF NAME, LOCATION OR JURISDICTION OF ORGANIZATION.** Borrower will not conduct Borrower's businesses under any name other than as disclosed to LENDER, change any of its places of business, or change its jurisdiction of organization without ten (10) days prior written notice to LENDER.

> 2.13. **SALE OR DISSOLUTION OF BUSINESS. Borrower shall not:** (a) sell,

[104] *See* Agreement, "Loan Agreement," General ¶ 3, General Terms ¶¶ 1.1, 2.6, pp. 4, 6 of 19 (Ex. 5); Wolfson Decl., ¶ 41 (Ex. 17).

[105] *See* Agreement, "Loan Agreement," Use of Proceeds Certification ¶ II, p. 10 of 19 (Ex. 5); Wolfson Decl., ¶ 42 (Ex. 17).

[106] Within the terms of the Agreement, the term "Borrower" refers to Sunshine Care Partners Inc, or Sunshine Care Partners; the term "Lender" refers to Plaintiff, Kapitus; the term "Guarantor" refers, in part, to Debtor/Defendant.

> dispose, **transfer** or otherwise convey **its** business, **assets** and/or any equity interest in Borrower; or (b) effectuate the suspension, dissolution, or termination or Borrower's business without the express prior written consent of LENDER, and (ii) the written agreement of any purchaser, assignee, or transferee assuming all of Borrower's and Guarantor's obligations under this Agreement pursuant to documentation satisfactory to LENDER (as applicable).[107]

Defendant represented to Plaintiff his personal guaranty of performance of the written representations, warranties, and covenants in the Loan Agreement.[108] Defendant understood the Agreement prohibited him from diverting SCP's receivables and from stopping Kapitus's ACH payments initiated under the Agreement.[109]

In spite of these written representations, warranties, and covenants, the facts show Defendant intentionally and knowingly:

- Stopped Merchant's September 8th and 13th, 2023, payments to Kapitus;[110]
- Formed SCP of Florida on September 11, 2023;[111]
- Incorporated and served as Vice President of SCP of Florida;[112] and
- Diverted at least $59,100.00 from SCP/Merchant to SCP of Florida, each of which transfers happened after Defendant's last payment to Kapitus cleared Merchant's Account on September 20, 2023.[113]

On these undisputed facts, Defendant misappropriated identifiable collateral subject to Kapitus's security interest and contractual control provisions, by diverting them to a different

---

[107] *See* Agreement, "Loan Agreement," General Terms ¶¶ 2.6., 2.7, 2.13, p. 6-7 of 19 (Ex. 5) (Emphasis added); Wolfson Decl., ¶ 43(Ex. 17).

[108] *See* Complaint, ¶ 57 (Ex. 1); Answer, ¶ 6 (Ex. 2) (admitting "documents will speak for themselves"); Agreement, "Guaranty," ¶ 1, p. 14 of 19 (Ex. 5); Wolfson Decl., ¶ 44 (Ex. 17).

[109] McMurray Depo. Tr. 7, 30:13-23 (Ex. 17).

[110] *See* Merchant Statement of Activity (Ex. 8); McMurray Depo. Tr., at 23:24-25; 25:1-4; 27:8-9; 75:18-23; 76:1-6 (Ex. 18).

[111] *See* SCP of Florida Entity Summary (Ex. 10); McMurray Depo. Tr., at 106:9-12 (Ex. 18).

[112] *See* Electronic Articles of Incorporation for SCP of Florida, p. 2 (Ex. 11); SCP of Florida Entity Summary (Ex. 10); McMurray Depo. Tr., at 105:22-24; 107:18-21 (Ex. 18).

[113] *See* Merchant Statement of Activity (Ex. 8); SCP-Arvest Account # 9327, Combined Statements, p. 47 of 165 (Ex. 9); Summary of Transfers from SCP-Arvest Account # 9327 to SCP-Arvest Account #3240 (Ex. 13); McMurray Depo. Tr., at 112:5-9 (Ex. 18).

account and entity in violation of the Agreement and to Kapitus's detriment.

**2. Defendant acted with fraudulent intent, inferable from the timeline, admitted knowledge, and pattern of transfers after default.**

To constitute embezzlement under Section 523(a)(4), the property must generally be appropriated or converted with the intent permanently to deprive.[114] Intent "can be inferred, however, from the surrounding circumstances" including a pattern of activity.[115] Taken as a whole, the Defendant's actions and the timeline as to the same show Defendant undertook a pattern of activity with the intent to permanently deprive Kapitus of its Collateral:

- Defendant ordered stop payments for Kapitus's ACH debits for September 8th and September 13th;
- On September 11, 2023, SCP of Florida was formed;[116]
- Defendant was the incorporator and Vice President of SCP of Florida;[117]
- Defendant understood the Agreement prohibited him from diverting SCP's receivables;[118]
- From at least September 20, 2023 to December 29, 2024 at least $142,084.19 in Receivables were deposited into SCP/Merchant's designated account ending #9327;[119] and
- From at least September 21, 2023 through December 20, 2023, Defendant systematically transferred at least $59,100.00 from SCP/Merchant to SCP of Florida.[120]

By stopping payment to Kapitus on the authorized Account, Debtor prevented Kapitus from receiving future payment after SCP and Defendant's default under the Agreement in spite of

---

[114] *See Alternity*, 492 B.R. at 327.
[115] *See Chenaille*, 493 B.R. at 252 (emphasis added).
[116] *See* SCP of Florida Entity Summary (Ex. 10); McMurray Depo. Tr., at 106:9-12 (Ex. 18).
[117] *See* Electronic Articles of Incorporation for SCP of Florida, p. 2 (Ex. 11); *See* SCP of Florida Entity Summary (Ex. 10); McMurray Depo. Tr., at 105:22-24; 107:18-21 (Ex. 18).
[118] McMurray Depo. Tr. 7, 30:13-23 (Ex. 18).
[119] *See* Summary of Deposits into Merchant / Borrower SCP, Inc.'s Account Ending #9327 From September 19, 2023, to December 29, 2023 (Ex. 14).
[120] *See* Summary of Transfers from SCP-Arvest Account # 9327 to SCP-Arvest Account #3240 (Ex. 13); McMurray Depo. Tr., at 112:5-9 (Ex. 18).

records showing from September 20, 2023 to December 29, 2024 at least $142,084.19 in Receivables were deposited into SCP/Merchant's designated account ending #9327.[121] Pursuant to the Agreement, Defendant on behalf of SCP/Merchant authorized Kapitus to obtain any amounts due to it under the Agreement via ACH only from the designated Account Ending #9327; Kapitus did not have authority to obtain the ACH Payments from any other account on behalf of SCP/Merchant.[122] By transferring SCP's Receivables, which, constituted Kapitus's Collateral, to SCP of Florida, Debtor prevented Kapitus from receiving future payment after SCP and Defendant's default under the Agreement.[123]

Defendant knowingly violated deposit-account and diversion covenants designed to protect Kapitus's collateral, and (ii) his pattern of transfers occurred after he affirmatively disabled Kapitus's bargained-for ACH access. At minimum, these undisputed facts establish a deliberate appropriation of collateral inconsistent with Kapitus's rights and with the intent to permanently deprive Kapitus of the benefit of its Collateral. Consequently, the Defendant's debt to Kapitus should not be discharged in accordance with Section 523(a)(4).

### B. Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) – Actual Fraud.

Section 523(a)(2)(A) excepts from discharge a debt by which a debtor obtains money by false pretenses, false statements, or actual fraud.[124] The Supreme Court has held "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent transfer schemes, that can be effected without a false representation."[125] Further, the Supreme Court "rejected the argument that

---

[121] *See* Summary of Deposits into Merchant / Borrower SCP, Inc.'s Account Ending #9327 From September 19, 2023 to December 29, 2023 (Ex. 14); Wolfson Decl., ¶ 45 (Ex. 17).
[122] *See* Wolfson Decl., ¶ 46 (Ex. 17).
[123] *See* Wolfson Decl., ¶ 47 (Ex. 17).
[124] *See* 11 U.S.C. § 523(a)(2)(A).
[125] *See Husky Int'l Elecs., Inc. v. Daniel Lee Ritz*, 578 U.S. 355, 359, 136 S. Ct. 1581, 1586 (2016).

such debts must also 'result from fraud at the inception of a credit transaction.'"[126]

Accordingly, the first element of a nondischargeability claim under § 523(a)(2)(A) predicated on actual fraud is to show "actual fraud" which has two parts: "actual" and "fraud."[127] Further, debtor must have taken some action in furtherance of the debtor's wrongful intent.[128] "Fraud, as used in § 523(a)(2)(A), connotes deception or trickery."[129] Actual fraud occurs "when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right."[130] Just like the transfers in *Husky* were not made in exchange for any value given to the corporation, in this case they were made solely to benefit the insider at the expense of the corporation's creditors.[131]

Defendant's conduct is sufficient to satisfy the actual fraud requirement. At a minimum, Defendant intentionally hindered Kapitus's ACH Payments pursuant to the Loan Agreement by stopping the same and cutting off Kapitus's rights to SCP's Receivables (i.e. its Collateral) while simultaneously opening a new business, SCP of Florida and transferring Kapitus's Collateral, in part, to SCP of Florida, an entity he controlled. This is not a simple breach of contract, such conduct establishes the requisite wrongful intent and conduct and action in furtherance of Defendant's intent sufficiently imbued by deception or trickery to deprive or cheat another of property or a legal right under § 523(a)(2)(A) claim for actual fraud.[132] "When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual

---

[126] *See Hatfield v. Thompson (In re Thompson)*, 585 B.R. 890, 902 (Bankr. W.D. Okla. 2017) (hereinafter "*Hatfield II*") (quoting *Husky*, 136 S.Ct. at 1589).
[127] *See Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 11 (B.A.P. 10th Cir. 2016) (hereinafter "*Hatfield*").
[128] *See Hatfield*, 555 B.R. at 11.
[129] *Id.*
[130] *See Trans-W., Inc. v. Mullins (In re Mullins)*, Adv. No. 16-01282, 2021 WL 2679137, at *5 (B.A.P. 10th Cir. June 30, 2021) (citations omitted).
[131] *In re Ritz*, 567 B.R. at 746.
[132] *See Hatfield II*, 585 B.R. at 905 (citing *Hatfield*, 555 B.R. at 12).

fraud and is not entitled to the fresh start provided by the Bankruptcy Code."[133]

### C. Attorney's Fees and Expenses, and Interest.

Kapitus is entitled to (1) attorney's fees of 25% of the total balance due or the actual attorney fees incurred, whichever is greater; and (2) court costs; (3) default interest of 10% from the date of default or such other amount as allowed by law; and (4) a judgment of nondischargeability as the same under the terms of the Agreement.[134] The Agreement entitles Kapitus to attorneys' fees and costs, which should be nondischargeable in the event judgment is awarded in Kapitus' favor.[135] Kapitus has been awarded attorney's fees in similar matters.[136]

## CONCLUSION

For the reasons set forth above, the undisputed material facts demonstrate Defendant's acts satisfy every element of embezzlement under Section 523(a)(4) and constitute a deliberate scheme to hinder Kapitus's rights, amounting to actual fraud under Section 523(a)(2)(A). Accordingly, Kapitus respectfully requests the Court grant its Partial Motion for Summary Judgment; enter judgment determining Defendant's debt to Kapitus is nondischargeable pursuant to §§ 523(a)(4) and 523(a)(2)(A); and award Kapitus its contractual attorney's fees, default fees, interest, and all other relief to which it is entitled.

---

[133] *Hatfield*, 555 B.R. at 11 (quoting *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 684 (10th Cir. BAP 2013)).

[134] *See* Agreement, "Loan Agreement," ¶ 3.3, p. 7 of 19 (Ex. 5).

[135] *See In re Bolger*, 351 B.R. 165, 172 (Bankr. N.D. Okla. 2006) (citing *Burns v. Great Lakes Higher Education Corp. (In re Burns)*, 3 F. App'x 689, 690-91 (10th Cir. 2001). ("In an unpublished decision...the Tenth Circuit recognized federal litigation, including bankruptcy proceedings, permits a prevailing litigant attorney'sfees only if they are authorized by federal statute or provided for in the contract") (collecting cases). FED. R. BANKR. P. 7054(b) does provide for an award of costs to the prevailing party.

[136] *See, e.g., Kapitus Servicing, Inc. v. Keith (In re Keith)*, No. 21-60559-MMP, 2024 WL 3350885, at *2 (Bankr. W.D. Tex. July 9, 2024) (awarding attorney's fees to Kapitus on a finding of nondischargeability).

Date: January 28, 2026

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*/s/ Christopher J. Gnaedig*
John T. Richer, OBA No. 19554
Christopher J. Gnaedig, OBA No. 33892
521 East 2nd St., Suite 1200
Tulsa, OK 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
Email: jricher@hallestill.com
Email: cgnaedig@hallestill.com

and

**LALLY LEGAL GROUP LLC**

*/s/ Elizabeth Lally*
Elizabeth Lally, admitted *pro hac vice*
Illinois Bar No. 6286664
Indiana Bar No. 28278-49
Iowa Bar No. AT0013010
Nebraska Bar No. 26428
12020 Shamrock Plaza, Suite 200
Omaha, NE 68154
Telephone: 402-778-4840
E-mail: elally@lally-legal.com

***Attorneys for Plaintiff Kapitus Servicing, Inc., as Servicing Agent for Kapitus LLC***

## APPENDIX A - EXHIBIT LIST

| Exhibit No. | Description |
|---|---|
| 1 | Complaint, without exhibits, Adv. No. 24-01023 (Bankr. N.D. Okla., Sep. 16, 2024) (Dkt. 1) |
| 2 | Answer to Complaint, Adv. No. 24-01023 (Bankr. N.D. Okla., Oct. 30, 2024) (Dkt. 11) |
| 3 | Secretary of State Summary dated September 2024 |
| 4 | June 2023 Application |
| 5 | Agreement (Combined) |
| 6 | Representations and Acknowledgements (“R&As”) |
| 7 | Kapitus’s UCC-1 Financing Statement |
| 8 | Merchant Statement of Activity |
| 9 | SCP - Arvest Account # 9327, Combined Statements |
| 10 | SCP of Florida Entity Summary |
| 11 | Electronic Articles of Incorporation for SCP of Florida |
| 12 | SCP - Arvest Account # #3240, Combined Statements |
| 13 | Summary of Transfers from SCP - Arvest Account # 9327 to SCP - Arvest Account #3240 from 2023-09-18 to 2024-08-27 |
| 14 | Summary of Deposits into Merchant / Borrower SCP, Inc.’s Account Ending #9327 From September 19, 2023 to December 29, 2023 |
| 15 | Kapitus’s August 29, 2024 Proof of Claim #10-1 |
| 16 | Notice of Bankruptcy, Bankr. Case No. 24-10777, (Dkt. 7). |
| 17 | Wolfson Declaration |
| 18 | Transcript of November 20, 2025 Deposition of Rusty W. McMurray |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of January, 2026, I electronically filed a copy of the foregoing document via the Court's CM/ECF System, which will send notification of such filing to all counsel of record herein.

*/s/ Christopher J. Gnaedig*
Christopher J. Gnaedig

21557938.2:014927.00001