**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In Re:<br>McMurray, Rusty W.<br>SSN: xxx-xx-8713<br>Debtor. | Case Number: 24-10777-M<br>Chapter 13 |
| KAPITUS SERVICING, INC., as<br>Servicing Agent for Kapitus, LLC,<br>Plaintiff,<br><br>v.<br><br>RUSTY W. McMURRAY,<br>Defendant. | Adversary Case Number: 24-01023-M |

**DEFENDANT'S OBJECTION TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT OF KAPITUS SERVICING, INC.**

COMES NOW, the Defendant, Rusty W. McMurray, and objects to the Motion for Partial Summary Judgment filed by the Plaintiff, Kapitus Servicing, Inc., on January 28, 2026, at Docket No. 21. In support of his objection, the Defendant states as follows:

## I. SUMMARY

Kapitus Servicing has moved for partial summary judgment under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). Material facts remain in dispute and the law does not support judgment in favor of Kapitus Servicing under either § 523(a)(2)(A) or § 523(a)(4). Ultimately, this Court should grant judgment in favor of the Defendant on the Plaintiff's claims under §§ 523(a)(2)(A) and 523(a)(4).

## II. ADDITIONAL UNDISPUTED FACTS.

The following additional facts are undisputed:

1. Dr. Donald Simmons is also an owner and officer of Sunshine Care Partners, Inc., ("SCP"). See the Declaration of Rusty W. McMurray.

2. Dr. Donald Simmons signed the loan agreement documents and also personally guaranteed the loan to Kapitus Servicing. See the Declaration of Rusty W. McMurray and Plaintiff's Exhibit 5 to the Motion for Partial Summary Judgment.
3. The representations made by Sunshine Care Partners, Inc., and Rusty W. McMurray in the Representations and Acknowledgements and the Loan Agreement were truthful when made. See the Declaration of Rusty W. McMurray.
4. Rusty W. McMurray did not make any representation in the Representations and Acknowledgements or the Loan Agreement with the intent to deceive Kapitus Servicing. See the Declaration of Rusty W. McMurray.
5. Kapitus Servicing is engaged in lending to high-risk borrowers. Kapitus is a lender of last resort. These facts are evidenced by the high rate of interest charged to Sunshine Care Partners, Inc., as evidenced in the Loan Agreement. See Plaintiff's Exhibit 5 to the Motion for Partial Summary Judgment where the total interest due in 24 months is stated to be $80,746.00 on a loan of $171,800.00 and payments are required every two weeks. See the Declaration of Rusty W. McMurray.
6. Sunshine Care Partners, Inc., was engaged in the business of providing medical care to senior citizens. See Declaration of Rusty W. McMurray.
7. To provide medical care it was required that Sunshine Care Partners, Inc., operate under the medical license of a licensed physician. See the Declaration of Rusty W. McMurray
8. Dr. Donald Simmons was a co-owner and officer of Sunshine Care Partners, Inc. See the Declaration of Rusty W. McMurray.
9. Sunshine Care Partners, Inc., provided medical services under the supervision of thed medical license of Dr. Donald Simmons. See the Declaration of Rusty W. McMurray.

10. In August of 2023, Dr. Donald Simmons' medical license came under investigation and restriction for having sexual relations with a patient. See the Declaration of Rusty W. McMurray.

11. Due to the investigation and restrictions on Dr. Donald Simmons' license, Sunshine Care Partners, Inc., was unable to continue providing medical services. See the Declaration of Rusty W. McMurray.

12. When Dr. Donald Simmons' medical license went under investigation and restriction, Sunshine Care Partners, Inc., was no longer able to provide medical services, collect revenue, and pay its debts. See the Declaration of Rusty W. McMurray.

13. When Sunshine Care Partners, Inc., was unable to find a physician to replace Dr. Donald Simmons it was forced to terminate its business operations. See the Declaration of Rusty W. McMurray.

14. The inability of Sunshine Care Partners, Inc., to pay its bills, including the loan payments owed to Kapitus Servicing, was a direct result of the actions of Dr. Donald Simmons and the investigation and restriction of his medical license. See the Declaration of Rusty W. McMurray.

15. At the time Sunshine Care Partners, Inc., executed the Loan Agreement and related documents with Kapitus Servicing, the Defendant could not have foreseen the events caused by Dr. Donald Simmons. See the Declaration of Rusty W. McMurray.

16. When Rusty W. McMurray authorized the transfer of funds from Sunshine Care Partners, Inc, to Sunshine Care Partners of Florida, Inc., he did so in his capacity as the Chief Executive Officer of Sunshine Care Partners, Inc. See the Declaration of Rusty W. McMurray. When I authorized the transfer of funds from Sunshine Care Partners,

Inc, to Sunshine Care Partners of Florida, Inc., I did so in my capacity as the Chief Executive Officer of Sunshine Care Partners, Inc. See the Declaration of Rusty W. McMurray.

17. Sunshine Care Partners, Inc., owned 66% of Sunshine Care Partners of Florida, Inc. See the Declaration of Rusty W. McMurray.

18. Sunshine Care Partners of Florida, Inc., was managed by and provided medical services to senior citizens in Florida under the medical license of Dr. Mark Ernhardt. See the Declaration of Rusty W. McMurray.

19. A National Provider Number ("NPN") is a unique identifier that allows medical provides to bill Medicare, Medicaid, and insurance companies in order to receive payment for medical services provided. See the Declaration of Rusty W. McMurray.

20. Sunshine Care Partners of Florida, Inc., was delayed in obtaining its NPN and through agreement with Sunshine Care Partners, Inc., it billed medical services under the NPN of Sunshine Care Partners, Inc. The agreement between Sunshine Care Partners, Inc., and Sunshine Care Partners of Florida, Inc., provided that upon receipt of payment by the insurer for medical services provided by Sunshine Care Partners of Florida, Inc., Sunshine Care Partners, Inc., would transfer the funds to Sunshine Care Partners of Florida, Inc. See the Declaration of Rusty W. McMurray.

21. Between September 1, 2023, and December 20, 2023, Sunshine Care Partners, Inc., received $59,100.00 from insurers for services rendered by Sunshine Care Partners of Florida, Inc. The $59,100.00 did not belong to and were not property of Sunshine Care Partners, Inc. See the Declaration of Rusty W. McMurray.

22. The $59,100.00 transferred by Sunshine Care Partners, Inc., to Sunshine Care Partners of Florida, Inc., between September 1, 2023, and December 20, 2023, were transferred pursuant to the agreement between Sunshine Care Partners, Inc., and Sunshine Care Partners of Florida, Inc. See the Declaration of Rusty W. McMurray.

## III. THE UNDISPUTED FACTS DO NOT SUPPORT JUDGMENT IN FAVOR OF THE PLAINTIFF, BUT THEY DO SUPPORT JUDGMENT IN FAVOR OF THE DEFENDANT.

In its Motion, the Plaintiff relies upon the transfer of $59,100.00 between September 1, 2023, and December 20, 2023, from Sunshine Care Partners, Inc., to Sunshine Care Partners of Florida, Inc., to support its claims under §§ 523(a)(2)(A) and 523(a)(4). However, the undisputed facts do not support such claims. The undisputed facts relevant to the transfer of $59,100.00 from Sunshine Care Partners, Inc., to Sunshine Care Partners of Florida, Inc., are:

a. Sunshine Care Partners, Inc., owned 66% of Sunshine Care Partners of Florida, Inc.

b. Sunshine Care Partners of Florida, Inc., was managed by and provided medical services to senior citizens in Florida under the medical license of Dr. Mark Ernhardt.

c. A National Provider Number ("NPN") is a unique identifier that allows medical provides to bill Medicare, Medicaid, and insurance companies in order to receive payment for medical services provided.

d. Sunshine Care Partners of Florida, Inc., was delayed in obtaining its NPN and through agreement with Sunshine Care Partners, Inc., it billed medical services under the NPN of Sunshine Care Partners, Inc. The agreement between Sunshine Care Partners, Inc., and Sunshine Care Partners of Florida, Inc., provided that upon receipt of payment by the insurer for medical services provided by Sunshine Care Partners of Florida, Inc., Sunshine Care Partners, Inc., would transfer the funds to Sunshine Care Partners of Florida, Inc.

e. Between September 1, 2023, and December 20, 2023, Sunshine Care Partners, Inc., received $59,100.00 from insurers for services rendered by Sunshine Care Partners of Florida, Inc. The $59,100.00 did not belong to and were not property of Sunshine Care Partners, Inc.

f. The $59,100.00 transferred by Sunshine Care Partners, Inc., to Sunshine Care Partners of Florida, Inc., between September 1, 2023, and December 20, 2023, were transferred pursuant to the agreement between Sunshine Care Partners, Inc., and Sunshine Care Partners of Florida, Inc.

(See the Declaration of Rusty W. McMurray). These undisputed facts establish that the funds transferred by Sunshine Care Partners, Inc., did not belong to Sunshine Care Partners, Inc., and were the property of Sunshine Care Partners of Florida, Inc. Sunshine Care Partners, Inc., did not have an ownership interest in the $59,100.00. These undisputed facts establish that the transfers to Sunshine Care Partners of Florida were not a scheme to deprive or cheat Kapitus of any funds and not a breach of any representation by the Defendant to Kapitus Servicing. These undisputed facts do not support Kapitus Servicing's claims under §§ 523(a)(2)(A) or 523(a)(4), but they do support judgment in favor of the Defendant. Upon consideration of the undisputed facts, this Court should deny Kapitus Servicing's motion for partial summary judgment and grant judgment in favor of the Defendant on Kapitus Servicing's claims under §§ 523(a)(2)(A) and 523(a)(4).

## IV. THE LAW DOES NOT SUPPORT JUDGMENT IN FAVOR OF KAPITUS SERVICING UNDER 11 U.S.C. § 523(a)(2)(A).

In the Tenth Circuit, courts have repeatedly held that, to prevail on a claim under Section 523(a)(2)(A), a creditor must prove the following elements: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on the representation; 4) the creditor's reliance was justifiable; and 5) the debtor's

representation caused the creditor to sustain a loss. *Johnson v. Riebesell (In re Riebesell )*, 586 F.3d 782, 789 (10th Cir. 2009) ; *Fowler Bros. v. Young (In re Young )*, 91 F.3d 1367, 1373 (10th Cir. 1996) ; *Copper v. Lemke (In re Lemke )*, 423 B.R. 917, 921–22 (10th Cir. BAP 2010). The undisputed facts do not support a finding that the Defendant made a false representation to Kapitus Servicing, that the Defendant made a false representation with the intent to deceive Kapitus Servicing, that Kapitus Servicing relied upon the false representation, that Kapitus Servicing reliance was justified, or that any representation by the Defendant caused the creditor to sustain a loss.

When Sunshine Care Partners, Inc., entered into a loan agreement with Kapitus Servicing, the representations it and the Defendant made were truthful. (See the Declaration of Rusty W. McMurray). When Sunshine Care Partners, Inc.'s, medical director, Dr. Donnald Simmons', medial license came under investigation and restriction, Sunshine Care Partners, Inc., was no longer able to provide medical services, collect revenue, and pay its debts, including the debt owed to Kapitus Servicing. (See the Declaration of Rusty W. McMurray). The restriction of Dr. Donald Simmons' medical license was unforeseeable at the time Sunshine Care Partners, Inc., borrowed the funds from Kapitus Servicing. (See the Declaration of Rusty W. McMurray). Since the Defendant could not have foreseen the events that led to the ultimate demise of Sunshine Care Partners, Inc., it cannot be inferred that any representation made by the Defendant months before were false at the time or much less intentionally false.

Furthermore, the transfers of the $59,100.00 from Sunshine Care Partners, Inc., to Sunshine Care Partners of Florida, Inc., were made pursuant to an agreement between Sunshine Care Partners, Inc., and Sunshine Care Partners of Florida, Inc., and not a scheme in contravention of the representations made by Sunshine Care Partners, Inc., and the Defendant to Kapitus Servicing.

Ultimately, the failure of Sunshine Care Partners to perform under the Loan Agreement with Kapitus Servicing, was nothing more than a breach of contract. A breach of contract does not rise to denial of discharge under 11 U.S.C. § 523(a)(2)(A) otherwise, no debtor could receive a discharge.

The facts and the law do not support the claim of Kapitus Servicing under § 523(a)(2)(A) and this Court should enter judgment in favor of the Defendant.

## V. THE LAW DOES NOT SUPPORT JUDGMENT IN FAVOR OF KAPITUS SERVICING UNDER 11 U.S.C. § 523(a)(4).

For purposes of establishing nondischargeability under section 523(a)(4), embezzlement is defined under federal common law as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 765 (10th Cir.1988). Kapitus Servicing argues that funds in the account of Sunshine Care Partners were Kapitus Servicing's property that it entrusted to the Defendant. Kapitus Servicing further spins it yarn by asserting that following Kapitus Servicing entrusting property owned by Sunshine Care Partners to the Defendant that the Defendant then fraudulently appropriated the funds.

Rather, the reality is that Rusty McMurray, the Defendant, did not embezzle property of Kapitus Servicing. Kapitus Servicing, by its own admission, only possessed a perfected security interest in accounts and accounts receivable of Sunshine Care Partners, Inc. Kapitus Servicing did not own the property it claims to have entrusted to the Defendant. Kapitus conflates a security interest with ownership, and a security interest is not ownership sufficient to support a claim for embezzlement under § 523(a)(4). *Bombardier Capital, Inc., v. Tinkler (In re Tinkler)*, 311 B.R. 869 (Bankr. Colo. 2004) wherein the court stated:

> "The Court finds that BCI's interest in the proceeds from the sale of Grand Lake's rental machines was a security interest. Such an interest does not convert those

> proceeds to BCI's property such that it can maintain an action for nondischargeability under § 523(a)(4) on account of embezzlement. *First National Bank v. Phillips (In re Phillips),* 882 F.2d 302, 304-305 (8th Cir.1989) (Finds that a security interest does not rise to the level of ownership sufficient to support a claim for embezzlement)."

Kapitus Servicing did not own the property it professes the Defendant to have embezzled, and Kapitus Servicing did not entrust the property to the Defendant. Kapitus Servicing could not entrust to the Defendant property which it did not own. Without property of Kapitus Servicing being entrusted to the Defendant, there can be no embezzlement.

Should this Court conclude that a security interest gave Kapitus an interest in property sufficient to support a claim of embezzlement, the $59,100.00 transferred by Sunshine Care Partners, Inc., was not property of Sunshine Care Partners, Inc., and was not collateral of Kapitus Servicing. Since the funds were not collateral of Kapitus Servicing, the transfer of the funds to Sunshine Care Partners of Florida, Inc., could not support a claim of embezzlement.

The facts and the law do not support the claim of Kapitus Servicing under § 523(a)(4) and this Court should enter judgment in favor of the Defendant.

WHEREFORE, the Defendant prays that the Court deny the Motion for Partial Summary Judgment of Kapitus Servicing and grant judgment in favor of the Defendant on Kapitus Servicing's claims under §§ 523(a)(2)(A) and 523(a)(4).

*/s/ Greggory T. Colpitts* — February 9, 2026
Date

Greggory T. Colpitts, OBA No.: 14381
**The Colpitts Law Firm**
6506 South Lewis, Suite 175
Tulsa, OK 74136-1079
918-747-9747
greg@colpittslawfirm.us
Attorneys for Defendant

## DECLARATION OF RUSTY W. McMURRAY

Pursuant to 28 U.S.C. § 1746, I, Rusty W. McMurray, declare under penalty of perjury:

1. I am over the age of eighteen years of age and competent to make the statements herein.

2. Dr. Donald Simmons is also an owner and officer of Sunshine Care Partners, Inc., ("SCP").

3. Dr. Donald Simmons signed the loan agreement documents and also personally guaranteed the loan to Kapitus Servicing.

4. The representations made by Sunshine Care Partners, Inc., and myself in the Representations and Acknowledgements and the Loan Agreement were truthful when made.

5. I did not make any representation in the Representations and Acknowledgements or the Loan Agreement with the intent to deceive Kapitus Servicing.

6. Kapitus Servicing is engaged in lending to high-risk borrowers. Kapitus is a lender of last resort. These facts are evidenced by the high rate of interest charged to Sunshine Care Partners, Inc., as evidenced in the Loan Agreement. See Plaintiff's Exhibit 5 to the Motion for Partial Summary Judgment where the total interest due in 24 months is stated to be $80,746.00 on a loan of $171,800.00 and payments are required every two weeks.

7. Sunshine Care Partners, Inc., was engaged in the business of providing medical care to senior citizens.

8. To provide medical care it was required that Sunshine Care Partners, Inc., operate under the medical license of a licensed physician.

9. Dr. Donald Simmons was a co-owner and officer of Sunshine Care Partners, Inc.

10. Sunshine Care Partners, Inc., provided medical services under the supervision of the medical license of Dr. Donald Simmons.

11. In August of 2023, Dr. Donald Simmons' medical license came under investigation and restriction for having sexual relations with a patient.

12. Due to the investigation and restrictions on Dr. Donald Simmons' license, Sunshine Care Partners, Inc., was unable to continue providing medical services.

13. When Dr. Donald Simmons' medical license went under investigation and restriction, Sunshine Care Partners, Inc., was no longer able to provide medical services, collect revenue, and pay its debts.

14. When Sunshine Care Partners, Inc., was unable to find a physician to replace Dr. Donald Simmons it was forced to terminate its business operations.

15. The inability of Sunshine Care Partners, Inc., to pay its bills, including the loan payments owed to Kapitus Servicing, was a direct result of the actions of Dr. Donald Simmons and the investigation and restriction of his medical license.

16. At the time Sunshine Care Partners, Inc., executed the Loan Agreement and related documents with Kapitus Servicing, I could not have foreseen the events caused by Dr. Donald Simmons.

17. When I authorized the transfer of funds from Sunshine Care Partners, Inc, to Sunshine Care Partners of Florida, Inc., I did so in my capacity as the Chief Executive Officer of Sunshine Care Partners, Inc.

18. Sunshine Care Partners, Inc., owned 66% of Sunshine Care Partners of Florida, Inc.

19. Sunshine Care Partners of Florida, Inc., was managed by and provided medical services to senior citizens in Florida under the medical license of Dr. Mark Ernhardt.

20. A National Provider Number ("NPN") is a unique identifier that allows medical provides to bill Medicare, Medicaid, and insurance companies in order to receive payment for medical services provided.

21. Sunshine Care Partners of Florida, Inc., was delayed in obtaining its NPN and through agreement with Sunshine Care Partners, Inc., it billed medical services under the NPN of Sunshine Care Partners, Inc. The agreement between Sunshine Care Partners, Inc., and Sunshine Care Partners of Florida, Inc., provided that upon receipt of payment by the insurer for medical services provided by Sunshine Care Partners of Florida, Inc., Sunshine Care Partners, Inc., would transfer the funds to Sunshine Care Partners of Florida, Inc.

22. Between September 1, 2023, and December 20, 2023, Sunshine Care Partners, Inc., received $59,100.00 from insurers for services rendered by Sunshine Care Partners of Florida, Inc. The $59,100.00 did not belong to and were not property of Sunshine Care Partners, Inc.

23. The $59,100.00 transferred by Sunshine Care Partners, Inc., to Sunshine Care Partners of Florida, Inc., between September 1, 2023, and December 20, 2023, were transferred pursuant to the agreement between Sunshine Care Partners, Inc., and Sunshine Care Partners of Florida, Inc.

Pursuant to 28 U.S.C. § 1746, I, Rusty W. McMurray, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

[signature] 2-9-26

Rusty W. McMurray Date